[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By agreement of the parties this Court, Barall, J., entered judgment dissolving the marriage on October 13, 1994, on the grounds of irretrievable breakdown, deferring the determination of alimony, property distribution, custody and support until further proceedings by this Court. The case thence came to the Court for trial on the merits as concerns final orders.
The plaintiff Clara Lee and the defendant Harold Lee were married on November 25, 1965. The plaintiff is fifty-one years of age. The defendant is fifty-eight years of age. The parties have one child issue of the marriage, Harold Vann Lee, born December 1, 1979. He is currently in the tenth year, a sophomore, at Northwest High School.
Both of the parties are well educated and are employed in positions commensurate with their education.
The plaintiff Mrs. Lee earned a degree in Health and Physical Education from Southern Connecticut State University, a Masters Degree in Dance Education from Springfield College, and a degree from the University of Hartford in Supervision and Administration. She is employed by the Hartford Board of Education as Vice Principal of Weaver High School. CT Page 4586
Her current gross salary is $77,324 per annum. Her weekly gross is $1,487 per week. Her mandatory deductions, which include federal and state income tax, retirement pension, medical/dental insurance and union dues add up to $411 per week. Discretionary payroll deductions for Credit Union and Aetna Life (annuity?) are excluded from the calculation. The net disposable income of the plaintiff wife is $1,077 per week. The plaintiff has assets of $36,173 (1/2 equity in family home, Kenwood Circle, Bloomfield), $4,000 automobile, $2,445 bank accounts, pension contributions $93,717.90; $6,643 mutual funds, and $10,000 Cape Cod time shares. The total of these assets is $152,978.90. The plaintiff has liabilities of $16,870. Her net worth is $136,108.
The plaintiff husband, however, purchased a rental property in the inner city, having induced the defendant to take joint title and to sign the mortgage notes. The defendant claims, in his affidavit, that the rental property has a value of $100,000, but mortgages thereon of $186,504, thereby exposing the plaintiff's assets to potential dissipation of $86,505 should the property go to foreclosure and the lenders resort to the plaintiff for payment.
Household furniture is disregarded for this analysis as the plaintiff lists "value unknown," and is also consequently disregarded in the defendant's affidavit to accomplish a fair analysis.
The defendant husband has earned a degree in Business Administration from Virginia State. He was initially employed by Aetna Insurance Company as a group underwriter. Thereafter he has held positions in sales for prominent corporations, including Sun Oil Company, Phoenix Insurance Company and Dow Chemical Company. He is presently employed by Connecticut Natural Gas Corporation as a Residential Energy Consultant.
His earnings from employment are $739 per week, $38,428 per year. The court excludes his mileage allowance of $65 per week, as his car lease payments of $80 per week exceed his mileage allowance. He has mandatory payroll deductions of $4 withholding, $32 FICA, $10 State Income Tax, $8 Medicare and $10 medical insurance for a total of CT Page 4587 $64. His net income after mandatory deductions is $675. The court allows an additional deduction of $42 per week for the 401K Pension Plan bearing in mind that this, plus Social Security will provide adequate retirement income, and that his total deductions for retirement are less than the plaintiff's mandatory retirement deductions. Hence $633 per week after deductions — $32,916 per year.
His assets consist of $36,173 (1/2 equity in the family home, Kenwood Circle, Bloomfield), $14,600 in checking and savings accounts, $15,000 cash value in life insurance, $30,000 401K plan, $19,440 CNG Pension, for a total of $115,213. Additionally, the defendant will be entitled to maximum social security retirement benefits at age 65, which has a present value of $45,000. This a significant asset, as the plaintiff wife, being a participant in the State of Connecticut State Teachers Retirement system is not entitled to Social Security based upon her own earnings. Nor is she entitled to a wife's share of the Social Security entitlement of the husband as the offset of her Teachers Retirement pension benefits reduces her entitlement to zero. See42 U.S.C § 402(b)(4)(A). Should that the Wooster Street inner city property be foreclosed, the defendant's loss could be as high as the total of the mortgage excess over the property value, i.e. $86,504. Bearing in mind his assets, including an attribution of the value of social security, of $160,713 his assets less foreclosure exposure of Wooster Street of $86,504 would be $74,209. His present liabilities, $2,800, would leave a net worth of $71,409.
The Wooster Street, Hartford, property is problematical. It is a multi-family residential property located in the inner city. The defendant has allowed the property to become and remain seriously deteriorated. The concept of purchasing the property was solely that of the defendant husband. The plaintiff asserts that she agreed to sign the mortgage notes under duress. The court finds no actual duress in the sense of threats of violence or the like. However the court does find that due to her passive and submissive nature she did execute the documents solely to avoid confrontation with the defendant. The plaintiff had no desire or enthusiasm whatsoever for purchasing this property and she was not asked to nor has she taken any role whatsoever in the management or the affairs of this CT Page 4588 property.
The defendant has treated this property as his own personal venture. A most vivid illustration of the reality of this circumstance is reflected in his 1992 and 1993 Federal Income Tax Return, when he, having determined to file the return as a "single" taxpayer, though still married, claimed the entire loss, including the depreciation, on his own "single" tax return without the knowledge or consent or acquiescence of the plaintiff.
The property cost $106,000. It was funded by an $85,000 bank loan, an $11,000 purchase money mortgage and the balance from his savings. No satisfactory explanation has been given to the court as to why the mortgage(s) has increased to $185,504 — some $89,000 above the original mortgage debt, other than that a bank known as Sentinel gave him a re-write of the mortgage to $150,000 in the era of lax banking practices. (The Court can only assume that the additional $35,504 is for late charges and accumulated interest, as the defendant simply stopped paying the mortgage some time ago.) Recently he has commenced paying $800 per month to avoid foreclosure and apparently is awaiting the outcome of this trial before making satisfactory arrangements with the bank to buy out the mortgage for $85,000, which is less than the affidavit value of the property, and is far less than the present mortgage balances.
No satisfactory explanation has been furnished to the court as to what he did with the surplus $50,000 he obtained from the re-write of the mortgage.
Additionally, since March 1994 he has withdrawn large sums from his bank accounts: March 16, 1994 $800; April 15, 1994 $1,200; May 10, 1994 $900; June 14, 1994 $1,000; June 15, 1994 $10,000; June 17, 1994 $1,000; June 29, 1994 $1,000; September 23, 1994 $1,000; October 4, 1994 $1,500; October 3, 1994 $1,200; October 24, 1994 $400; November 25, 1994 $2,500; December 15, 1994 $2,500 — approximately $25,000. No satisfactory explanation has been given as to the use of these funds. Further, on February 11, 1994 he redeemed $10,461 in Pioneer Fund Shares and $6,321.52 of these shares on that same date. CT Page 4589
Additionally in June 1994 he received $27,500 as his share of the sale of his mother's house, an equal sum going to his two sisters. He claims that he spent most of that money caring for his mother in a convalescent home from March to September. The court does not credit that contention, bearing in mind particularly that his sisters received an equal amount and that they would obviously have been expected to contribute a fair share to the mother's upkeep.
The defendant claims that he spent money in gambling losses. He also gave $530 on July 5, 1994 and $530 on September 25, 1994 to a lady with whom he has a romantic relationship, and purchased jewelry for her costing $675 in December 1994.
All of these withdrawals and purchases, and yet he claims to have been unable to pay the mortgage on Wooster Street, the effect of which is to seriously jeopardize the financial security of his wife, the plaintiff.
The court finds that the plaintiff has been a good and faithful wife to the defendant over these many years, whereas the defendant has treated the plaintiff with callous indifference, hostility and humiliation, thereby causing the alienation of the parties.
Orders
The court enters the following orders:
As agreed to by the parties the parties shall have joint custody of the minor Harold Van Lee. Primary residence shall be with the plaintiff with rights of reasonable visitation in the defendant. The defendant shall pay child support in the amount of $125 per week which is in accord with the child support guidelines and in accord with the agreement of the parties.
Additionally the defendant shall pay thirty five percent of the cost of the education of the child each year at Northwest Catholic High School, commencing with the present academic year September 1994 to June 1995. Cost of education consists of tuition, books and supplies, student activity fees and all other fees and charges billed by the CT Page 4590 school for the cost of such schooling.
The plaintiff shall furnish to the defendant copies of the school's billings during each year commencing with the present academic year. The defendant shall pay to the plaintiff his said share of said expenses with 30 days of the plaintiff mailing copies of the school's billings to the defendant at the last address furnished to the plaintiff by the defendant for this purpose. For the current year, 1994-1995 said verification of billing for the entire year shall be furnished within 30 days of the date of this judgment, and the defendant shall make payment of his share directly to the plaintiff within thirty days of said mailing.
Neither party shall pay to the other party alimony. The court orders no alimony for either party.
The defendant shall transfer to the plaintiff by quit claim deed, his right title and interest in the premises known as and located at 41 Kenwood Circle, Bloomfield, Connecticut. The plaintiff shall give to the defendant her promissory note and mortgage in the amount of $36,173, together with simple interest at the rate of four per cent per annum, payable on December 1, 1999 or upon the death or remarriage of the plaintiff, or upon a sale of the property by the plaintiff, or at such time as the plaintiff has ceased occupancy of said premises as her principal residence for a continuous period of six months, whichever event first occurs. The plaintiff shall hold harmless and indemnify the defendant from any claims or liabilities arising out of the mortgage or mortgages presently on said property and from any liability arising out of the plaintiff's ownership, use and occupancy of said property subsequent to the date of the transfer of title as herein ordered by this court. Said transfer of title, and execution of the mortgage securing this order shall take place within thirty days of the date of this judgment. This hold harmless and indemnity order shall be in the nature of maintenance and support and shall survive and not be discharged or otherwise affected in the event of bankruptcy of the plaintiff.
In the event that the plaintiff has not been released from all mortgages and any other claim or claims known to CT Page 4591 the defendant arising out of any mortgage or mortgages, or other claims arising out of her ownership interest in the Wooster Street property, the defendant's funds from the payment of this herein ordered mortgage on 41 Kenwood Circle shall be held in escrow by a neutral party, in an interest bearing account in a bank or lending institution, to secure the indemnity and hold harmless of the plaintiff by the defendant, as hereinafter provided, concerning the 149-153 Wooster Street property.
As concerns the property known as and located at 149-153 Wooster Street, Hartford the defendant shall indemnify and hold the plaintiff harmless from any and all claims and liability arising out of the ownership, maintenance and control of the said premises, including but not limited to the mortgage(s) presently on said property. Upon satisfactory proof by the defendant, given to the plaintiff, that the plaintiff has been released from any and all such obligations by each and every such known creditor, including the holders of any and all mortgages, the plaintiff shall transfer to the defendant by quit claim deed all of her right title and interest in said property 149-153 Wooster Street, Hartford. Any net proceeds arising out of the transfer of title to a third party, after release of the plaintiff by the holders of any and all mortgages and claims, shall be exclusively that of the defendant. Any and all losses and expenses arising out of the past, present, or future maintenance or ownership of, or sale of said property shall be borne solely by the defendant.
This indemnity and hold harmless obligation shall be in the nature of additional maintenance and support and shall survive and shall not be discharged or otherwise affected in the event of bankruptcy of the defendant.
Each of the parties shall be solely responsible for the liabilities listed on their respective financial affidavits submitted to the court for this trial, except as to the mortgages on the respective parcels of real estate, as heretofore ordered.
The court does not assign to either party any right title or interest in the respective pension, 401K or IRA of the other party. The court determines that these CT Page 4592 retirement plans were accumulated solely through the individual efforts of the respective parties without commensurate aid, comfort, support or encouragement by the other party. Each of the parties shall retain all other assets listed as their sole assets in their respective affidavits.
The personal property at the Kenwood Circle home will remain with and shall be the exclusive property of the plaintiff, with the exception of the defendant's hand tools, power chain saw and the office file cabinet in the garage, which shall belong to the defendant and shall be picked up by him upon reasonable notice of date and time of pick up given to the defendant.
The time share properties on Cape Cod shall remain the property of the plaintiff wife. The plaintiff shall have exclusive use of the time share in West Yarmouth, Massachusetts. The plaintiff shall use the winter week in North Truro and the defendant shall use the summer week in North Truro.
The defendant shall maintain the medical insurance on the minor child through coverage at his place of employment. The parties shall pay equally any unreimbursed health expenses for the minor child.
Each of the parties shall carry life insurance in the amount of $100,000 on that party's life naming and keeping the child as irrevocable beneficiary.
The defendant shall furnish to the plaintiff a detailed listing of income and expenses as concerns the Wooster Street property for the years 1992, 1993 and 1994 no later than 30 days from this judgment, and shall furnish such listing for each year thereafter no later than April 1 following each such calendar year until such time as said property is transferred from the plaintiff's name as provided in this judgment.
L. Paul Sullivan, J. CT Page 4593